EMMA A. WOOD, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF FRANK W. WOOD, DECEASED, PLAINTIFF-RESPONDENT, v. ATLANTIC CITY AND SHORE RAILROAD COMPANY, A CORPORATION, HOWARD McDOWELL AND FRANK McBRIDE, JOINTLY SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS-APPELLANTS.

Argued May 4, 1943—Decided August 5, 1943.

Before BROGAN, CHIEF JUSTICE, and Justice BODINE.

For the plaintiff-respondent, *Samuel Levinson*.

For the defendants-appellants, *Kirkman & Mulligan* (*Eugene N. Harris*, of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. The defendants appeal from a judgment in favor of the plaintiff. The verdict returned by the jury was, on rule to show cause, reduced from $10,000 to $6,000. Two grounds of appeal are argued, the first in challenge of a portion of the court's charge to the jury, and the other claiming that the trial judge, in disposing of the rule to show cause, committed an abuse of discretion in that he refused a new trial.

This is a railroad crossing death case, the action being brought by decedent's widow, as administratrix *ad prosequen-*

*dum.* The decedent, Frank W. Wood, died as the result of injuries suffered by him when a light delivery truck he was driving collided with the corporate defendant's trolley car which at the time was under the control and operation of the individual defendants, McBride and McDowell, motorman and conductor, respectively.

We do not think the appellants are entitled, under the circumstances, to present the first ground of appeal—that the trial court fell into error in charging the jury—and for this reason: After verdict the defendants filed three reasons in support of their rule to show cause as follows: that the jury finding was against the clear weight of the evidence on the question of liability and resulted from "passion, prejudice, partiality and mistake;" that the verdict was excessive and, finally, that the verdict was improperly returned in that the jury found for Mrs. Wood in the amount of $10,000 instead of for "Emma A. Wood, administratrix *ad prosequendum* of the Estate of Frank W. Wood, deceased." After the argument on the rule a brief was submitted to the court by the defendants; therein the "reasons" advanced at the argument were enlarged to include a fourth reason which was: that the verdict was contrary to the court's charge to the jury. It is maintained in the brief of the appellants that certain parts of the court's charge to the jury may still be assigned as error, even though in the brief submitted to the trial court in support of the defendants' rule it was said that the verdict was contrary to the court's charge. To uphold this concept these reasons are advanced: that the added reason was not among the reasons "filed;" that the added reason was not argued orally; that the defendants' contention in the brief was that the jury failed to heed certain parts of the charge and therefore it may be argued on appeal that certain other parts of the charge amounted to legal error. But this is clearly not the fact. In the very first sentence of the brief filed in the court below it is stated that the jury's verdict was contrary to the charge of the court. The phraseology is that "the jury totally disregarded the charge of the court, first, on the question of liability and, secondly, on the question of damages." Further reading of the brief makes mani-

fest the fact that the argument on this point was general throughout. We consider the law in this jurisdiction settled on the proposition that all grounds advanced for a new trial on rule to show cause why a verdict should not be set aside become *res judicata* whether those points be reserved or not. (Compare *Cleary* v. *Camden,* 119 *N. J. L.* 387.) There were reservations in the rule to show cause stated thus: "All exceptions taken by the defendant in the trial of the cause * * * are hereby reserved." Nonetheless exceptions that are argued in support of a rule to show cause may not be reserved for appeal. An appellant may not invoke the charge of the trial court in an effort to make the rule absolute and, when unsuccessful in such attempt, later attack the charge previously invoked. (*Cf. Cleaves* v. *Yeskel,* 104 *N. J. L.* 497, and cases therein cited.)

The appellants in the present argument rely upon certain language of the Cleaves case as follows: "But it may be that if defendant specifies in his reasons on the rule that the verdict was against certain portions of the charge as made, or requests refused, specifying them instead of including the whole charge, as here, that he may thereafter argue on appeal that matters charged or the denial of matters not so specified, were erroneous." In the present case the fact situation overcomes this argument. The entire charge of the court was invoked to support the application for a new trial. It follows that no portion of the charge may now be attacked. Finally, we think there is no logic, let alone merit, in the appellants' position, that this point not listed in the filed reasons is still saved for appeal, though it was fully argued as an added reason for a new trial, in the brief. The rationale of the cases, cited above, is directly to the contrary.

The only ground of appeal on which the appellants may be heard is: that the trial court committed an abuse of discretion when after reducing the verdict a new trial was refused. A detailed delineation of the discrepant facts on the precise issue is necessary at this juncture. In the main, the issue turns on whether or not the defendants had complied with the requirements of our law, *R. S.* 48:12–57, that a bell, weighing not less than thirty pounds, be rung con-

tinuously in approaching a grade crossing of a highway, beginning at a distance of at least 300 yards from the crossing and continuing until the engine has crossed such highway; or a steam whistle sounded. It was stipulated in the case that the corporate defendant was incorporated under a steam railroad charter and was operating as a railroad on a private right of way, which right of way is intersected by Dolphin Avenue in Northfield, the place where the accident occurred. Now the disputed point before the learned trial judge was whether the requirements of the statute had been satisfied. On this issue plaintiff's witness, Bernice Risley, testified that just prior to the accident she turned her automobile into the driveway of her home, which was close by the scene of the accident, alighted from the car, opened the garage door and was about to enter the car again to drive it into the garage when she heard the crash of the collision. The distance from her house to the crossing is about 400 feet across an open field. She said that no whistle was sounded for a period of two minutes before the crash nor was a bell rung; further, that there was nothing to prevent her from hearing a steam whistle or a bell if either had been sounded. The witness was "positive" that no bell was rung or whistle blown prior to the crash; the trolley bell was ringing, however, when she got to the crossing immediately after the happening. Her testimony is attacked because of her responses to questions on cross-examination as follows: "Q. And the mere fact that you didn't hear them [bell or whistle] doesn't indicate they didn't ring, does it? A. Not necessarily, no." The witness admitted that when she got out of her car to open the garage door her motor was running and that she wasn't thinking about the trolley car on the defendant's right of way. On redirect examination, however, she testified that to her knowledge the bell had not rung for two minutes before the crash; that there was no doubt about it in her mind; that the whistle had not been blown to her knowledge, and again on cross-examination: "Q. Miss Risley, you say not to your knowledge. I say to you: Isn't it possible that that bell might be ringing and you not have heard it? A. You would hear it if it was ringing. Q. I say to you,

Miss Risley, that you have said that neither the whistle nor the bell sounded to your knowledge? *A.* Yes, sir. *Q.* I say to you: Isn't it possible that the bell or whistle might have sounded and you not have heard it? *A.* Yes, sir. *Q.* That is true, isn't it? *A.* Yes." There were other witnesses on this issue. Robert C. Johnson, a passenger on the trolley car, testified that he first heard the bell when the motorman put on the brakes and this happened when the trolley was about a car length away from the crossing; that this was the first time he took notice that the bell was rung and that he didn't know whether it had been ringing prior to that or not. Frank McBride, motorman, testified that he started the bell ringing after he left Northfield station (the stop before Dolphin Avenue), and that the bell was ringing constantly from then until after the occurrence of the accident. McDowell testified to the same effect and said further that the brakes were applied at a point about eighty or ninety feet from the crossing. Henry A. Price, a passenger, testified he first noticed the bell ringing when the trolley car was midway between two stations, Northfield and Dolphin. Charles E. Bresh, a passenger, testified that the trolley bell was rung right after the car had left Northfield station and continued to ring until after the accident. Nan Steelman, a passenger, also stated the bell started ringing after the car left Northfield and continued until after the occurrence of the accident. Thus there were several stories concerning the ringing of the bell—Miss Risley that the bell had not been rung prior to the accident; Mr. Johnson that he first noticed the bell ringing when the brakes were applied to the trolley car; Price that the bell was rung when the car was midway between Northfield and Dolphin Avenue, and Miss Steelman and Mr. Bresh corroborating the testimony of the motorman and conductor.

Concerning Miss Risley's testimony, we do not consider, in appraising it, that it can be viewed as contradictory or as self-neutralized. This witness emphatically stated the bell had not been rung before the accident and her affirmative reply to the question of whether it was *possible* that the bell had been ringing without her hearing it was, under the cir-

cumstances, a matter for the jury as to the weight it would attribute to that testimony. Under her testimony therefore the statutory requirement was not satisfied nor was it satisfied under the testimony given by Mr. Price, and this for the reason that the distance between Northfield and Dolphin is 1,500 feet and if the Price testimony was believed—it will be remembered that he said he heard the ringing of the bell when the car was midway between the two stations—his recollection would have it that the bell was rung beginning at a point less than 300 yards from the Dolphin crossing.

Appraising all the testimony on this point, we conclude that the discordant versions of the several witnesses made the issue clearly one of fact and we perceive no abuse of discretion in refusing to set aside the jury's finding on this question. It is also argued that the decedent was guilty of contributory negligence and the court's refusal to set the jury's finding aside was also an element in the alleged abuse of discretion. We find no merit in this argument. Miss Risley testified that the trolley car did not have its headlights turned on. It was dark at the time, five o'clock in the evening toward the end of December. There were lights on Mr. Wood's delivery truck as well as on Miss Risley's automobile.

The defendant McBride testified that he saw the truck when he was about 200 feet away from the crossing at a time when the decedent was 100 feet distant from the right of way. He admitted that his speed at the time was forty miles an hour and there doesn't seem to be much dispute about the fact that the trolley did not slow down until it reached a point eighty or ninety feet from the crossing. In this state of the facts there was ample on which the jury might legitimately find the defendants guitly of negligence and but slender proof connoting contributory negligence. We entertain this view in the light of the testimony concerning the speed of the car under the attending circumstances, the darkness, and the non-use of its headlights.

There is a further argument that because of the uninterrupted view available to Wood he should have seen the car; but the evidence, as we appraise it, is not so clearly conclusive of negligence on the decedent's part as to require the

court, as a matter of duty, to find in favor of the appellant on that ground. The issue on this phase was so factual that a finding either way was legitimate.

Taken all in all, the evidence was not so one-sided as to compel a finding by the trial judge contrary to the one he made. We discern no abuse of discretion. The judgment is accordingly affirmed, with costs.